MICHAEL E. STOBERSKI, ESQ.
Nevada Bar No. 004762
ZACHARY J. THOMPSON, ESQ.
Nevada Bar No. 011001
OLSON, CANNON, GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, Nevada  89129
(702) 384-4012
mstoberski@ocgd.com

Attorneys for Defendants RE/MAX EXTREME,
EDWARD C. REED and BARBARA P. REED

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * *

| | |
|---|---|
| TAE-SI KIM, an individual, and JIN-SUNG HONG, an individual, <br><br>Plaintiffs, <br><br>vs. <br><br>ADAM B. KEARNEY, an individual; EDWARD C. REED, an individual; BARBARA R. REED, an individual; REED TEAM, dba RE/MAX EXTREME, a Nevada general partnership; FIRST AMERICAN TITLE, a foreign corporation; GINA THOMPSON, an individual; ALVERSON, TAYLOR, MORTENSEN & SANDERS, a Nevada law firm; and, the Estate of JAMES L. ZEMELMAN, ESQ. <br><br>Defendants. | CASE NO. 2:09-CV-2008 <br><br>**DEFENDANTS RE/MAX EXTREME, EDWARD C. REED AND BARBARA P. REED'S MOTION TO DISMISS** |

COME NOW, Defendants RE/MAX EXTREME, EDWARD C. REED and BARBARA P. REED, by and through their attorneys, OLSON, CANNON, GORMLEY & DESRUISSEAUX, and hereby move to dismiss Plaintiffs' Twenty-Third Cause of Action for Breach of Fiduciary Duties, Twenty-Sixth Cause of Action for Breach of Contract, and Twenty-Seventh Cause of Action for Breach of the Duty of Good Faith and

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012 Telecopier (702) 383-0701

Fair Dealing as under no set of facts as pled are Plaintiffs entitled to relief from these moving Defendants on those cause of action.

This motion is made and based on the attached points and authorities, all papers and pleadings on file herein, and such oral argument as the court may entertain at the hearing of the motion.

DATED this 14th day of December, 2009.

OLSON, CANNON, GORMLEY &
DESRUISSEAUX

By /s/ Michael E. Stoberski
MICHAEL E. STOBERSKI, ESQ.
Nevada Bar No. 004762
ZACHARY J. THOMPSON, ESQ.
Nevada Bar No. 011001
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Attorneys for Defendants RE/MAX
EXTREME, EDWARD C. REED and
BARBARA P. REED

**POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Tae-Si Kim ("Kim") and Jin-Sung Hong ("Hong") (collectively "Plaintiffs") filed a Complaint on October 15, 2009, which named Edward C. Reed ("Mr. Reed"), Barbara R. Reed ("Mrs. Reed"), Reeds and RE/MAX Extreme ("RE/MAX Extreme") (collectively "RE/MAX Extreme Defendants"), among others. For the purposes of this motion only, the facts alleged in Plaintiffs' Complaint are to be accepted as true. In the Complaint, Plaintiffs allege that the

RE/MAX Extreme Defendants represented the Plaintiffs as their real estate licensees in a transaction to purchase property known as APN # 177-19-801-008 ("Subject Property").

Plaintiffs entered into a contract for the purchase of the Subject Property. After entering into the purchase agreement, Plaintiffs were not able to obtain conventional financing in time for the closing on the Subject Property, which necessitated other arrangements. Plaintiffs allege that while representing Plaintiffs in the transaction, they directed Plaintiffs to use a mortgage broker named Adam Kearney ("Kearney").

Kearney and the Plaintiffs allegedly agreed to an arrangement whereby the right to purchase the Subject Property under the purchase agreement would be assigned to Kearney. Kearney in turn would lend Plaintiffs approximately $100,000, which would then be applied toward the purchase price of the property, and Kearney would finance the remainder of the purchase price by obtaining a loan from Cumorah Credit Union. Plaintiffs would then have the right or the option to repurchase the Subject Property from Kearney after they were able to obtain conventional financing and other conditions. This agreement was reduced to writing in an Option Agreement, which was allegedly drafted by counsel for RE/MAX International, Inc. The RE/MAX Extreme Defendants were not parties to the Option Agreement.

Plaintiffs allege that they ultimately attempted to exercise their rights under the Option Agreement. They were able to obtain the money to pay off the remainder of the amounts due to Kearney, which they allege they in fact paid to Kearney. Kearney, in turn, was supposed to open escrow, transfer title,

and pay off any liens, including the Cumorah Credit Union lien. Plaintiffs allege that Kearney failed to pay off the lien and absconded with their funds. Plaintiffs contend that Kearney failed to transfer clear and marketable title to them in violation of the Option Agreement. Plaintiffs allege that this failure to pay off the lien ultimately led to a foreclosure on the Subject Property. As a result of this foreclosure, Plaintiffs allege that they lost the money paid to Kearney and the money that they had placed down on the property. Plaintiffs contend that these actions, among other representations and directives, were part of a fraudulent scheme among the RE/MAX Extreme Defendants and Kearney.

Subsequently, on October 15, 2009, Plaintiffs filed their Complaint against the RE/MAX Extreme Defendants repeatedly alleging, among other things, that the RE/MAX Extreme Defendants breached fiduciary duties. However, under Nevada law, real estate licensees are not subject to liability based on common law duties, which include fiduciary duties. When real estate licensees are acting in that capacity in a real estate transaction they are subject only to the duties codified in NRS Chapter 645. *See* NRS 645.251. Plaintiffs' Twenty-Third Cause of Action for Breach of Fiduciary Duties is predicated upon a common law fiduciary duty. Since real estate licensees are not required to comply with such common law principles, Plaintiffs have failed to state a claim upon which relief may be granted against the licensees Mr. Reed and Mrs. Reed. Consequently, dismissal is appropriate.

. . .

Additionally, dismissal is appropriate on Plaintiffs' Twenty-Sixth Cause of Action for Breach of Contract. In that action, Plaintiffs essentially allege that the Option Agreement was breached. (See Complaint, §§ 282-283.) However, Plaintiffs have already correctly noted and pled that the RE/MAX Extreme Defendants are not parties to the Option Agreement. (Complaint, § 29.) Since the RE/MAX Extreme Defendants are not parties to the Option Agreement, the Option Agreement cannot serve as the basis for a breach of contract claim against them. Consequently, under no set of facts as alleged by Plaintiffs can they be entitled to relief on their breach of contract claim, making dismissal appropriate. Accordingly, dismissal of Plaintiffs' Twenty-Seventh Cause of Action for Breach of the Duty of Good Faith and Fair Dealing is appropriate because the claim is predicated on the Option Agreement of which the RE/MAX Extreme Defendants were not a party.

## II.

### STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for failure to state a claim upon which relief may be granted. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). The pleading standard of Rule 8 does not require detailed factual allegations; however, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

A complaint will not survive a motion to dismiss for failure to state a claim upon which relief may be granted where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). To determine whether the complaint contains sufficient factual matter to state a claim, the Court first should identify which pleadings are to be accepted as true. *See id.* at 1950. For the purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true; however, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* at 1949-50 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

After identifying the pleadings, if any, that are to be accepted as true for the purposes of the motion to dismiss, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. For a claim to be plausible on its face, the plaintiff must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

## III.

### BACKGROUND FACTS

On or about June 24, 2005, while Mr. and Mrs. Reed were acting as Plaintiff Hong's real estate licensees, Hong entered into a real estate purchase contract to acquire the Subject Property for approximately $435,000. (Complaint, § 43.) Plaintiffs placed $10,000 in earnest money down, which at some point became non-refundable. (Complaint, § 45 and Complaint Exhibit 6.) The closing on the Subject Property was to occur by August 12, 2005. (*See* Complaint, § 443.)

Subsequently, Hong attempted to obtain conventional financing. Hong received pre-approval in a letter from Lee J. Meyer of AAA Mortgage Corporation on July 1, 2005, for conventional financing for the purchase of the Subject Property. (Complaint, § 47.) Unfortunately, the Plaintiffs, or Hong in particular, were not able to obtain conventional financing for the Subject Property. The Reeds informed the Plaintiffs that the financing had fallen through. (Complaint, § 48.) Plaintiffs allege that the Reeds then advised and instructed Plaintiff Hong

to obtain alternative financing. (Complaint, § 49). Plaintiffs contend that the Reeds further instructed Plaintiffs to engage Adam Kearney ("Kearney"), who was a licensed mortgage broker at the time. (Complaint, § 51.)

Plaintiffs contacted Kearney and he allegedly offered to obtain a loan for approximately $315,000 of the remainder of the purchase price to acquire the Subject Property by the August 12, 2005 closing date. (Complaint, § 78.) Plaintiffs allege that on or about August 10, 2005, Kearney and the Reeds instructed Hong to assign his right to purchase the property under the initial purchase agreement to Kearney. (Complaint, § 65.) On that date, Hong entered into an Option Agreement, which was drafted by counsel for RE/MAX International, Inc. as an accommodation. (Complaint, § 69-70.)

The Option Agreement recitals indicated that Hong had located the Subject Property but that Hong did not have sufficient time to apply for and obtain financing for the proceeds required to close escrow on the Subject Property, which was set to take place on or before August 12, 2005. (*See* Exhibit 1 to Plaintiffs' Complaint.) In spite of that, Hong desired the right to acquire the Subject Property, so the Option Agreement was entered to salvage the transaction so that it could proceed to a timely close of escrow. (*See* Exhibit 1 to Plaintiffs' Complaint.) To allow the transaction to proceed to a timely close of escrow, Kearney agreed to assume the initial purchase agreement, take title to the Subject Property, finance the property, and grant Hong the option to purchase fee title to the Subject Property. (*See* Exhibit 1 to Plaintiffs' Complaint.) In

other words, Kearney agreed to finance the purchase of the Subject Property and to take title in his name, while Hong would be given the opportunity to purchase the Subject Property back from Kearney. Hong would also be required to place additional money down to cover the portion of the purchase price that was not financed. (See Exhibit 1 to Plaintiffs' Complaint.)

Plaintiffs allege that Kearney and the Reeds informed Plaintiffs that the Plaintiffs would have to pay additional money down of $100,000 by the scheduled closing date of August 12, 2005, in order to prevent losing the $10,000 deposit that had been placed when the initial purchase agreement had been entered into. (Complaint, § 53.) Plaintiffs also allege that on or about August 7, 2005, Kearney and the Reeds informed Plaintiff that an additional $17,394 was required from the Plaintiffs. (Complaint, § 61.) As with the rest of the transaction, the Plaintiffs did not have the ability to obtain the additional money to be placed down prior to August 12, 2005. (Complaint, § 54.) Consequently, other arrangements had to be made in order to acquire the additional $100,000.

Plaintiffs allege that Kearney and the Reeds advised the Plaintiffs to obtain a hard-money loan of $100,000 through Kearney to cover the amount needed for the additional earnest money deposit. (Complaint, § 57.) On or about August 12, 2005, Plaintiffs allege that Kearney provided the $100,000 to Hong in exchange for a Note and associated compensation, including seven points and ten percent interest. (Complaint, § 58; see Complaint Exhibit 7.) Plaintiffs do not allege that the RE/MAX Extreme Defendants purchased the Note or in any other way were a party to

the Note. Regardless, Plaintiffs allege that they obtained the additional money to be placed on the Subject Property for the closing as provided for in the Option Agreement.

Under the terms of the Option Agreement, Hong could exercise the option within one year by paying $10,000 to Kearney and the remaining principal and any interest accrued on the Note as of the date of closing. (Complaint, § 79.) Plaintiffs allege that they complied with those terms. (Complaint, § 79.) Plaintiffs allege that on March 14, 2006, they delivered $330,000 to Kearney. (Complaint, 107.) They allege that since they complied with the terms and executed the option, Kearney was required to open an escrow with First American Title Company, convey the Subject Property to Hong by grant, bargain, and sale deed, have the escrow agent issue a policy of title insurance, and reconvey the Subject Property to Hong free and clear of the loan. (Complaint, § 80.)

Plaintiffs allege that Kearney failed to perform as required by the Option Agreement. (Complaint, § 80.) They allege that he failed to perform pursuant to the terms of the Option agreement by failing to clear title to the Subject Property and by failing to transfer clear and marketable title to Plaintiffs. Plaintiffs recognize that the RE/MAX Extreme Defendants were not parties to the Option Agreement. (Complaint, § 29.)

Later, Plaintiffs were allegedly informed by an employee of First American Title Company that the Subject Property was not clear of liens. (Complaint, § 126.) Plaintiffs allege that they hired an attorney, who informed the Plaintiffs in July of 2006 that the liens had been cleared and that the Subject Property had

been transferred with clear and marketable title to Plaintiffs. (Complaint, § 139.) Plaintiffs contend that the RE/MAX Extreme Defendants also informed them that the title had been cleared. (Complaint, § 119.)

Plaintiffs allege that title had not in fact been cleared and that the Subject Property was still subject to a lien from Cumorah Credit Union, which was the entity that had allegedly provided the loan to Kearney to finance the purchase of the Subject Property. (*See* Complaint, § 140.) Plaintiffs allege that instead of paying off the Cumorah Credit Union loan as Kearney was required to do before transferring title to Plaintiffs, Kearney instead absconded with the $315,000 in principle, commissions, and other fees.

Plaintiffs allege that this failure to pay off the Cumorah Credit Union loan ultimately led to a foreclosure on the Subject Property. (*See* Complaint, § 146.) They allege that on December 16, 2008, they received a notice of foreclosure for the lien, and the Subject Property was ultimately foreclosed upon. (*See* Complaint, §§ 146, 150.) They allege that this foreclosure essentially wiped out Plaintiffs' prior cash investment that was placed down on the Subject Property as well as the money that was paid to Kearney to exercise their option under the contract. (*See* Complaint, § 146.)

. . .

. . .

. . .

. . .

. . .

III.

ARGUMENT

A. **PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTIES AGAINST THE RE/MAX EXTREME DEFENDNATS SHOULD BE DISMISSED BECAUSE THE CLAIM IS PRECLUDED BY STATUTE.**

NRS 645.251 removed any requirement for a licensee to comply with common law duties in Nevada. Specifically, NRS 645.251 states, "[a] licensee is not required to comply with any principles of common law that may otherwise apply to any of the duties of the licensee as set forth in NRS 645.252, 645.253 and 645.254 and the regulations adopted to carry out those sections." NRS 645.251. In other words, a real estate licensee is not subject to causes of action based upon common law duties; instead, real estate licensees are subject only to causes of action based upon the statutory duties contained in NRS 645.252, 645.253 and 645.254.

A claim for breach of fiduciary duty is based on a common law fiduciary duty. *See Frantz v. Johnson*, 116 Nev. 455, 465, 999 P.2d 351, 357-58 (2000) (recognizing breach of fiduciary duty as a common law cause of action). In the real estate licensee context, such a common law fiduciary duty would have arisen based upon a relationship between the parties where trust and confidence is imposed. Although the legislature could have retained such a common law duty and the principles developed in relation thereto, it chose not to by adopting NRS 645.251, which eliminated such common law duties and supplied statutory duties instead. Now, real estate licensees in Nevada are subject only to the duties set forth in NRS 645.252, 645.253 and 645.254 when acting in their roles as real estate licensees. *See* NRS 645.251.

In this case, Plaintiffs pled that they expected trust and confidence in the integrity and fidelity of the RE/MAX Extreme Defendants, which is how, in part, fiduciary duties would have arisen at common law. (Complaint, § 265.) Plaintiffs pled that the RE/MAX Extreme Defendants voluntarily undertook those duties and that they breached them. (See Complaint, §§ 264-266.) Plaintiffs did not identify a statutory basis for their breach of fiduciary duties claim, which is likely because fiduciary duties are not contemplated under NRS Chapter 645. Given that Plaintiffs did not identify a statutory basis for the claim and that they appear to have pled that fiduciary duties arose as a result of placing trust and confidence in the RE/MAX Extreme Defendants, Plaintiffs' claim is based on a common law duty. Real estate licensees are not required to comply with such common law duties when acting as a licensee in a transaction. As a result, under no set of facts as pled can Plaintiffs be entitled to relief on their breach of fiduciary duties claim. Consequently, dismissal for failure to state a claim is appropriate with respect to Plaintiffs' Twenty-Third Cause of Action for Breach of Fiduciary Duties against the RE/MAX Extreme Defendants.

B. **PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT AGAINST THE RE/MAX EXTREME DEFENDANTS SHOULD BE DISMISSED BECAUSE THE RE/MAX EXTREME DEFENDANTS ARE NOT PARTIES TO THE OPTION CONTRACT ALLEGEDLY BREACHED.**

In Nevada, where a party does not allege facts necessary to establish the formation of a contract between the parties, that party's breach of contract claim necessarily fails. *See Snyder v. Viani*, 110 Nev. 1339, 1344, 885 P.2d 610, 613 (1994). With

respect to the formation of a contract, "[b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Since a breach of contract claim requires the existence of an enforceable contract, which in turn requires an offer and acceptance, meeting of the minds, and consideration, the complaint must at least generally allege facts sufficient to support such elements.

In this case, the only contract Plaintiffs have alleged to have been breached is the Option Agreement. (Complaint, §§ 281-283.) However, Plaintiffs have explicitly acknowledged in their Complaint that the RE/MAX Extreme Defendants were not parties to the Option Agreement. (*See* Complaint, § 29.) Since they were not parties to the Option Agreement under Plaintiffs' own facts, there certainly could not have been an offer or acceptance, meeting of the minds, or consideration to establish the existence of a valid and binding contract among the Plaintiffs and the RE/MAX Extreme Defendants that could form the basis for a breach of contract claim as pled. As a result, dismissal of Plaintiffs' Twenty-Sixth Cause of Action for Breach of Contract is appropriate with respect to the RE/MAX Extreme Defendants.

C. **PLAINTIFFS' CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED BECAUSE THE OPTION CONTRACT DID NOT GIVE RISE TO THE DUTY WITH RESPECT TO THE RE/MAX DEFENDANTS.**

It is well settled in Nevada that every contract imposes the duty of good faith and fair dealing upon the contracting parties. *State, University and Community College System v. Sutton*, 120 Nev. 972, 989, 103 P.3d 8, 19 (2004); *see also Hilton Hotels*

*Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993) ("It is well established within Nevada that every contract imposes upon the *contracting parties* the duty of good faith and fair dealing.") (emphasis added). In other words, the covenant of good faith and fair dealing only arises between or among parties to a contract, not non-parties.

In this case, Plaintiffs' allege that the RE/MAX Extreme Defendants, among others, breached a duty of good faith and fair dealing by contravening the spirit and intent of the Option Agreement. (*See* Complaint, § 286.) In other words, Plaintiffs are alleging that a duty of good faith and fair dealing existed based upon the Option Agreement. As discussed above, Plaintiffs have acknowledged that the RE/MAX Extreme Defendants were not parties to the Option Agreement. (*See* Complaint, § 29.) Since they were not parties to the contract that gave rise to the alleged duty of good faith and fair dealing, under Nevada law, they could not be held liable under a theory of breach of the duty of good faith and fair dealing. As a result, under no set of facts as pled by Plaintiffs could they be entitled to recover against the RE/MAX Extreme Defendants for breach of the duty of good faith and fair dealing arising from the Option Agreement. Thus, dismissal of Plaintiffs' Twenty-Seventh Cause of Action for Breach of the Duty of Good Faith and Fair Dealing is appropriate.

## IV.

## CONCLUSION

Plaintiffs have repeatedly alleged that the RE/MAX Extreme breached fiduciary duties. Under Nevada law, real estate licensees are not subject to common law duties, including

fiduciary duties, when they are acting in that capacity in a real estate transaction; rather, they are subject only to the duties codified in NRS Chapter 645. Plaintiffs pled the breach of common law fiduciary duties though required compliance with such duties have been eliminated. Consequently, dismissal of Plaintiffs' Twenty-Third Cause of Action for Breach of Fiduciary Duties for failure to state a claim upon which relief may be granted is appropriate.

Dismissal of Plaintiffs' Twenty-Sixth Cause of Action for Breach of Contract is also appropriate. The basis of Plaintiffs breach of contract claim is the Option Contract. Plaintiffs recognized and pled that the RE/MAX Extreme Defendants were not parties to the Option Agreement. Since were not parties to the Option Agreement, the Option Agreement cannot serve as the basis for a breach of contract claim against them. As a result, Plaintiffs' Twenty-Sixth Cause of Action for Breach of Contract should be dismissed for failure to state a claim upon which relief may be granted as under no set of facts as pled could Plaintiffs be entitled to relief.

Dismissal of Plaintiffs' Twenty-Seventh Cause of Action for Breach of the Duty of Good Faith and Fair Dealing is appropriate because the claim is based upon an implied duty arising from the Option Agreement. In Nevada, the implied duty of good faith and fair dealing arises only between the parties to a contract. The RE/MAX Extreme Defendants were not a party the Option Contract. As a result, Plaintiffs' Twenty-Seventh Cause of Action for Breach of the Duty of Good Faith and Fair Dealing should be

. . .

1  dismissed for failure to state a claim upon which relief may be
2  granted.
3     DATED this __14th__ day of December, 2009.

4                                OLSON, CANNON, GORMLEY &
                                 DESRUISSEAUX

6                                By_____/s/ Michael E. Stoberski_____
7                                   MICHAEL E. STOBERSKI, ESQ.
                                    Nevada Bar No. 004762
8                                   ZACHARY J. THOMPSON, ESQ.
                                    Nevada Bar No. 011001
9                                   9950 West Cheyenne Avenue
                                    Las Vegas, Nevada  89129
10                                  Attorneys for Defendants RE/MAX
                                    EXTREME, EDWARD C. REED and
11                                  BARBARA P. REED

**CERTIFICATE OF SERVICE VIA EFP PROGRAM**

I hereby certify that on this __14th__ day of December, 2009, I did serve, via the Court's CM/ECF System, a copy of the above and foregoing DEFENDANTS RE/MAX EXTREME, EDWARD C. REED AND BARBARA P. REED'S MOTION TO DISMISS:

>Steven A. Gibson, Esq.
>J. Scott Burris, Esq.
>GIBSON LOWRY BURRIS, LLP
>7201 West Lake Mead Boulevard, Suite 503
>Las Vegas, Nevada 89128
>702-541-7899 fax
>Attorneys for Plaintiffs

>_/s/ Andrea Flintz_
>An employee of OLSON, CANNON, GORMLEY & DESRUISSEAUX