STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@gibsonlowry.com
J. SCOTT BURRIS, ESQ.
Nevada Bar No. 10529
sburris@gibsonlowry.com

GIBSON LOWRY BURRIS LLP
City Center West
7201 West Lake Mead Boulevard
Suite 503
Las Vegas, Nevada 89128
Telephone 702.541.7888
Facsimile 702.541.7899

Attorney for Plaintiffs
*Tae-Si Kim and Jin-Sung Hong*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TAE-SI KIM, an individual, and JIN-SUNG HONG, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM B. KEARNEY, an individual; EDWARD C. REED, an individual; BARBARA R. REED, an individual; REED TEAM, dba RE/MAX EXTREME, a Nevada general partnership; FIRST AMERICAN TITLE, a foreign corporation; RE/MAX International, Inc., a Colorado corporation; GINA THOMAS, an individual; ALVERSON, TAYLOR, MORTENSEN & SANDERS, a Nevada law firm; and, the Estate of JAMES L. ZEMELMAN, ESQ.<br><br>Defendants. | Case No.: 2:09-cv-02008-PMP-PAL<br><br>**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS BY DEFENDANTS EDWARD C. REED, BARBARA R. REED, AND RE/MAX EXTREME** |

Plaintiffs, Tae-Si Kim (Ms. Kim) and Jin-Sung Hong (Mr. Hong) (hereinafter, collectively "Plaintiffs"), by and through their counsel, Gibson Lowry Burris LLP, hereby submit Plaintiffs' Response to Motion to Dismiss by Defendants Edward C. Reed ("Mr. Reed"), Barbara

1

R. Reed ("Mrs. Reed"), and RE/MAX Extreme d.b.a. the Reed Team ("RME") (defendants collectively referred to as "Reed Defendants").

Plaintiffs' Response is based on the following Memorandum of Points and Authorities, on the pleadings and papers on file herein, on the oral argument of counsel to be adduced at hearing, and on any other matter this Court wishes to take into consideration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Court should deny the Reed Defendants' Motion to Dismiss three causes of action[1] because Plaintiffs clearly satisfied the pleading requirements of Fed. R. Civ. P. 8-9 by alleging requisite facts associated with each of the elements of Plaintiffs' claims. First, Plaintiffs pled facts demonstrating that Plaintiffs are entitled to relief for the Reed Defendants' breach of fiduciary duties because Plaintiffs adequately plead all of the essential elements, and, of course, there is no requirement that Plaintiffs cite to any statutes or case law. Moreover, the Reed Defendants are certainly not exempt from all common law duties, despite their assertion to the contrary. Next, Plaintiffs pled sufficient facts that the Reed Defendants breached contractual duties, including the duty of good faith and fair dealing. There is no requirement that the Reed Defendants be expressly designated in writing as nominal, contractual parties for the Reed Defendants to be liable for breach of contract or breach of good faith. Indeed, the facts alleged show that the Reed Defendants intended to be contractually liable to the Plaintiffs, and such contractual liability was not precluded by the August 10, 2005 Option Agreement ("Option Agreement"). In arguing for dismissal of the claim for breach of contract, the Reed Defendants improperly attempted to narrow the relevant allegations by omitting or ignoring the allegations that demonstrate the extent of the Reed Defendants' contractually liability. In sum, the Court should deny the Reed Defendants' Motion because Plaintiffs pled more than enough facts for each cause of action.

---

[1] The Reed Defendants moved to dismiss three of the sixteen causes of action against the Reed Defendants: (No. 23) Breach of Fiduciary Duties; (No. 26) Breach of Contract; and (No. 27) Breach of the Duty of Good Faith and Fair Dealing.

## II. FACTS

The Plaintiffs alleged that the parties entered into a contract in which the Reed Defendants intended to be contractually obligated to obtain clear and marketable title to the property identified as APN#177-19-801-008 ("Property") for the Plaintiffs. (*See e.g.,* Compl. ¶¶ 68, 84.) The Plaintiffs further alleged that the Reed Defendants were obligated to act as Plaintiffs' fiduciaries and advisers to obtain clear and marketable title to the Property. (Compl. ¶¶ 25-27, 31, 39). In exchange for the Reed Defendants' contractual obligations, the Plaintiffs agreed to be contractually obligated to pay the Reed Defendants a commission of $17,400.00. (Compl. Ex. 8 at p. 3, Item 702.) As part of the Reed Defendants scheme to obtain their commissions, the Reed Defendants instructed attorney Richard Tobler, Esq., to draft an Option Agreement as a purported "accommodation" to Plaintiffs, which did not, by itself, mention the Reed Defendants' contractual obligations to Plaintiffs. (Compl. Ex. 1.) The financial arrangements included an assignment ("Assignment") for which the Plaintiffs made further allegations of the Reed Defendants' contractual liability. (Compl. ¶ 67.) Nevertheless, neither the Option Agreement nor the Assignment discharged the Reed Defendants contractual obligations to obtain clear and marketable title to the Property for Plaintiffs. Notably, Plaintiffs alleged that the Reed Defendants created a joint venture or partnership with Defendant Mr. Adam B. Kearney, which gives rise to the Reed Defendants' joint and severable liability for contracts executed by Mr. Kearny on behalf of the joint venture or partnership. (Compl. ¶ 68.)

## II. ARGUMENT

### A. *Plaintiffs Pled the Requisite Elements for the Reed Defendants' Breach of Fiduciary Duties*

The Reed Defendants misunderstand NRS 645.251, which expressly does not eliminate all common law duties:

> A licensee is not required to comply with any principles of common law ***that may otherwise apply*** to any of the duties of the licensee as set forth in NRS 645.252, 645.253 and 645.254 and the regulations adopted to carry out those sections.

NRS 645.251. Under a plain reading of the statutes, a licensee is not exempt from a claim for breach of fiduciary duty under the common law because NRS 645.252-254 ("Statutory Duties")

3

do not "apply" to fiduciary duties. *Id.*[2] Ironically, the Reed Defendants admit that the legislature did "not contemplate" a fiduciary duty when the legislature replaced some of the common law duties with Statutory Duties. *See* Docket No. 9 at 13:7-9, 12:19-26. Plainly, the Statutory Duties apply to duties of care (negligence) and duties of disclosure/confidentiality. *See* NRS 645.252-254. Moreover, the Statutory Duties clearly do not apply to contractual duties in which a party intends to become contractually obligated to act as a fiduciary.[3]

Notably, the Reed Defendants' only discernable objection to Plaintiffs' claim for relief under "Breach of Fiduciary Duties" is that the Reed Defendants, who are licensed real estate agents,[4] are subject only to the Statutory Duties as expressed in NRS 645.252-254 when acting within the scope of real estate licensees, which is inaccurate. The Reed Defendants cited to no case law that could support such a position. Instead, licensees, such as Mr. and Mrs. Reed, are clearly not exempt from all common law duties. *Id.* Nevertheless, the Reed Defendants argue that "Plaintiffs did not identify a statutory basis for their breach of fiduciary duties claim, which is likely because fiduciary duties are *not contemplated* under NRS Chapter 645." Docket No. 9 at 13:7-9. Indeed, it is exactly for this reason, "that fiduciary duties are not contemplated," that Mr. and Mrs. Reed are *not* exempt from such a common law claim. *Id.* Moreover, NRS 645 does not relieve the Reed Defendants of any contractual obligations. As a result, Mr. and Mrs. Reed must answer the claim for breach of fiduciary duties because Mr. and Mrs. Reed are not exempt; and RME must answer Plaintiffs' claim for breach of fiduciary duties because RME is not a licensee.

> **B.** ***The Reed Defendants Must Answer the Claims for Breach of Contract Because Plaintiffs Pled Sufficient Allegations of Contract Formation***

The Reed Defendants must answer Plaintiffs' claims for breach of contract because the Plaintiffs alleged that the Reed Defendants and the Plaintiffs intended to create contractual

---

[2] To the extent that the Statutory Duties do apply to fiduciary duties, Plaintiffs pled the requisite factual allegations for Mr. and Mrs. Reed's breach of the Statutory Duties.

[3] Plaintiffs discuss the Reed Defendants contractual obligations in more detail below.

[4] The Reed Defendants failed to distinguish between the licensees who are subject to NRS 645 versus the company which is not. That is, two of the Reed Defendants, Mr. and Mrs. Reed, are real estate licensees, who are subject to NRS 645. However, Defendant RME is not a licensee and, therefore, not subject to NRS 645.

obligations which arise out of: (1) the Option Agreement; (2) the Assignment; (3) the Reed Defendants' partnership with Mr. Kearney; and, (4) an overarching contractual obligation to obtain clear and marketable title on behalf of Plaintiffs.  Pursuant to Nevada law, the essential element to show "the creation of a contract, whether express or implied, is a manifestation, by the parties, of an intent to contract." *AT&T Corp. v. MRO Communications, Inc.*, 1999 WL 1178965, 5 (9th Cir. 1999).  Thus, to survive a motion to dismiss a contract claim pursuant to Rule 12(b)(6) based on allegations related to formation, the Plaintiff must show that "the parties intended to create direct legal obligations between themselves." *AT&T Corp. v. MRO Communications, Inc.*, 1999 WL 1178965, 5 (9th Cir. 1999).  Certainly, to be liable for breach of contract, there is no requirement that the liable defendants be expressly designated in any writings:

> where a party does all that he is required to do under the terms of a contract into which he has entered, and is only prevented from reaping the benefit of such contract by the fault or wrongful act of the other party to it, the law gives him a remedy against the other party for such breach of contract.

*New York, Lake Erie & Western Railroad Co. v. Winter's Adm'r*, 143 U.S. 60, 73, 12 S.Ct. 356, 360 (1892).  Incidentally, "the question of whether a contract exists is one of fact." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (Nev. 2005) *accord Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1138 (9th Cir. 2001) (applying California law to hold that the question of the intent of the parties . . . is typically a question of fact for the jury").  Indeed, most "[f]actual disputes regarding breach of contract are questions for a jury to decide." *State, University and Community College System v. Sutton*, 120 Nev. 972, 983, 103 P.3d 8, 15 (Nev. 2004).  In any event, a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on contract formation must fail when the Plaintiff has alleged contract formation.

The Reed Defendants rely on *Snyder v. Viani,* 110 Nev. 1339 (Nev. 1994), for the rule that the Plaintiff must "allege facts necessary to establish the formation of a contract between the parties." Docket No. 9 at 14:26-26.  However, the facts of *Snyder* are obviously distinguishable from the instant case.  In *Snyder,* an underage patron, Mr. Lovett, became intoxicated at a tavern in Nevada. *Snyder*, 110 Nev. at 1340.  Mr. Lovett left the tavern and drove, while still intoxicated, across state lines into California where he crashed into a motor home killing himself

and four others. *Id.* The administrator for Mr. Lovett's estate, Ms. Shauna Snyder, sued the tavern. *Id.* at 1340. In granting the tavern's motion to dismiss, the court relied on an overarching rule that, "[a]t common law, courts refused to recognize a cause of action arising out of the sale or furnishing of intoxicating beverages." *Id.* at 1343. The court specifically held that facts that would be "necessary to establish contract formation between the tavern and Lovett" were not present in that case. *Id.* at 1344. There, the parties did not intend to form a contract and the Plaintiff was unable to allege such intentional formation. As discussed below, however, Plaintiffs provided at least four separate and independent grounds to show that the Reed Defendants intended to be contractually obligated to Plaintiffs. Thus, the Plaintiffs more than satisfied the minimum notice requirements for Plaintiffs' breach of contract claim.

### 1. *Breach of Contract for the Option Agreement*

The Reed Defendants incorrectly argue—as a quasi-summary judgment argument—that the Option Agreement could not be a basis for the Reed Defendants' contractual obligations. However, Plaintiffs specifically alleged, at a minimum, that the Reed Defendants intended to be contractually obligated pursuant to the Option Agreement, which must be accepted as true:

> 84. On approximately August 10, 2005, Mr. Reed and Mrs. Reed … and Kearney while at the offices of Mr. Reed, Mrs. Reed, and RE/MAX, assured Plaintiffs that, upon exercising the option, Mr. Reed and Mrs. Reed … and Kearney would ensure that Mr. Reed and Mrs. Reed … and Kearney would clear the Property of any liens and transfer the title to the Property, free and clear ("Clear Title Misrepresentation"), to Plaintiffs through the services of FATCO.
> \* \* \*
> 282. Mr. Reed, Mrs. Reed, and RME … and Kearney were required to use Plaintiffs' money to deliver clear marketable title with title insurance as required by the terms of the RE/MAX Option Agreement.

(Compl ¶¶ 84, 282.) The Reed Defendants ignore the allegations above and then attempt, improperly, to narrow the scope of the allegations below:

> 278. Plaintiffs paid the full price, $435,000.00, plus other fees and costs, for the Property.
>
> 279. Plaintiffs complied with the terms of the RE/MAX Option Agreement *and other financing arrangements* as instructed by Mr. Reed, Mrs. Reed, and RME . . . and Kearney for Plaintiffs to be entitled to own the Property free and clear of mortgage liens with marketable title.

(Compl. ¶¶ 278-279) (emphasis added). The Reed Defendants ignore that, pursuant to all of the "financing arrangements"( including the Option Agreement), Plaintiffs alleged that the Reed Defendants intended to be contractually obligated to obtain clear and marketable title for Plaintiffs. In their Motion to Dismiss, the Reed Defendants misrepresent, and substantially

narrow the scope of, the relevant allegations regarding Plaintiffs' claim for breach of contract. For example, the Reed Defendants assert that "the only contract Plaintiffs have alleged to have been breached is the Option Agreement." Docket No. 9 at 14:9-11 (citing Compl. ¶¶ 281-283). In fact, however, the Reed Defendants, pursuant to their own self-serving agenda, merely ensured that the Reed Defendants were not named as parties within the document entitled "Option Agreement," but, as shown above, the Plaintiffs alleged that the Reed Defendants are still liable for breach of contract regarding the Option Agreement. Thus, as an independent basis, the Court should deny the Reed Defendants' Motion to Dismiss based on Plaintiffs' allegation numbers eighty-four (84) and two-hundred-and-eighty-two (282) because Plaintiffs alleged that the Reed Defendants intended to be liable pursuant to the Option Agreement.

### 2. *Breach of Contract for the Assignment*

Plaintiffs pled sufficient allegations that the Reed Defendants intended to be contractually obligated for the Assignment, which was one of the "financing arrangements" referenced above:

> 67. In exchange for the Assignment, Mr. Reed and Mrs. Reed … and Kearney orally promised that Mr. Kearney would acquire the Property for Plaintiffs and act in Plaintiffs' best interests to obtain the Property for Plaintiffs.

(Compl. ¶ 67.) The Assignment was one of the documents—or, "financial arrangements"—used during the course of the Reed Defendants' performance of the consistently alleged and overarching contractual obligation for the Reed Defendants to acquire clear and marketable title to the Property for Plaintiffs. As this allegation must be taken as true, Plaintiffs clearly alleged the existence of another contract that forms the basis of Plaintiffs breach of contract claim. Thus, as an independent basis, the Court should deny the Reed Defendants' Motion to Dismiss based on Plaintiffs' allegation number sixty-seven.

### 3. *The Reed Defendants Were Liable as Partners for the Binding Representations of Defendant Adam Kearney*

Pursuant to general partnership liability, Plaintiffs alleged that the Reed Defendants created a joint venture or partnership with Mr. Kearny such that the Reed Defendants could not avoid their contractual obligations to Plaintiffs by merely delegating to Mr. Kearney the written

formality of signing the Option Agreement, or any other documents used by the joint venture or partnership:

> 68. Mr. Reed and Mrs. Reed … and Kearney engaged in a concert of action, and pursuant to *a joint venture or partnership* with each other, with respect to the Note and the financing *and acquisition of the Property* as fiduciaries for Plaintiffs.

(Compl. ¶ 68) (emphasis added). Nevada law provides that the partnership will be bound where loss or injury is inflicted upon a third party by a partner acting in the ordinary course of the business of the partnership.

> Where by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

NRS 87.130. The principles of law regarding general partnerships encompass joint ventures as well. *See Haertel v. Sonshine Carpet Co.,* 102 Nev. 614, 616, 730 P.2d 428, 429 (1986); *accord Kaufman-Brown Potato Co. v. Long*, 182 F.2d 594, 599 (9th Cir.1950). Notably, it "is immaterial that the parties deign not to call their relationship, or believe it not to be, a partnership, especially where as here the rights of third persons are involved." *Long*, 182 F.2d at 599. Moreover, pursuant to NRS 87.150, all partners are held jointly and severally liable for everything chargeable to the partnership. Thus, under partnership and joint venture law, the Reed Defendants are liable for breach of contract pursuant to the contractual liabilities where Mr. Kearney was a party to a contract pertaining to the acquisition of the Property for Plaintiffs. As a result, the Reed Defendants Motion to Dismiss should be denied, and the Reed Defendants must answer the Plaintiffs' claim for breach of contract.

        4.    *Plaintiffs Alleged that the Reed Defendants Intended to Be Contractually Obligated for an Overarching Contract to Obtain Clear and Marketable Title for Plaintiffs*

Plaintiffs alleged more than a mere breach of the contractual obligations arising out of the Option Agreement, the Assignment, and the partnership or joint venture. For example, Plaintiffs alleged that, pursuant to the Option Agreement, the Assignment, and the Note, Plaintiffs, first, performed Plaintiffs' contractual obligations:

> Plaintiffs had paid full value, $435,000.00, plus fees and costs, as instructed by Mr. Reed and Mrs. Reed … and Kearney to acquire the Property in full satisfaction of Plaintiffs' obligations pursuant to the Assignment (Ex. 6), the Note (Ex. 7), *and* the RE/MAX Option Agreement (Ex. 1)[.]

(Compl. ¶ 108) (emphasis added).  Then, Plaintiffs alleged that the Reed Defendants breached their contractual obligations regarding the entire set of financial arrangements:

> 283. Mr. Reed, Mrs. Reed, and RME … and Kearney failed to pay off the lien against the Property; and Mr. Reed, Mrs. Reed, and RME … and Kearney failed to deliver clear and marketable title with title insurance.

(Compl. ¶ 279.)  Plaintiffs alleged, in sum, that the Reed Defendants intended to become contractually obligated to obtain clear marketable title for the Plaintiffs, which comports with Plaintiffs' reasonable expectation of what the Reed Defendants were contractually obligated to do:

> 39. In approximately June of 2005, Plaintiffs … agreed to make an investment that should have resulted in Plaintiffs' ownership of an investment property identified as APN#177-19-801-008 in Clark County, Nevada (the "Property").

(Compl. ¶ 39).  Notably, Plaintiffs alleged that the Reed Defendants received full payment of their commissions as part of Plaintiffs' contractual obligations.  (Compl ¶¶ 31, 281.)  Thus, even under a summary judgment standard,[5] it should be undisputed that, in order to be entitled to receive those commissions, the Reed Defendants were contractually obligated to perform for the Plaintiffs.  Indeed, if Plaintiffs had not paid the Reed Defendants' commissions (and if the Plaintiffs had obtained clear marketable title), then the Reed Defendants would be claiming a breach of contract.  Thus, it should be undisputed that the Reed Defendants intended to be contractually obligated to obtain clear and marketable title for Plaintiffs.

Additionally, Plaintiffs alleged that the Reed Defendants intended to become contractually obligated to secure conventional financing for the Plaintiffs:

> 40. In approximately June of 2005, Mr. Reed and Mrs. Reed . . . advised, assured, warranted to, and guaranteed to Plaintiffs that Plaintiffs would qualify to obtain conventional financing for the Property

---

[5] Pursuant to a motion for summary judgment: "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(2).

(Compl. ¶ 40.) Moreover, Plaintiffs alleged that the Reed Defendants intended to become contractually obligated to protect Plaintiffs' best interests in dealing with Defendant Mr. Adam Kearney:

> 51. Mr. Reed and Mrs. Reed … assured Plaintiffs that Mr. Reed, Mrs. Reed, and RE/MAX would protect Plaintiffs' best interests in dealing with Kearney.

(Compl ¶ 51.) Clearly, the allegations demonstrate that the Reed Defendants intended to perform contractual obligations to the Plaintiffs, and the Reed Defendants received compensation despite their breach of those contractual obligations. As a result, the Reed Defendants Motion to Dismiss should be denied, and the Reed Defendants must answer the Plaintiffs' claim for breach of contract.

### C. *The Reed Defendants Must Answer the Claims for Breach of the Covenant of Good Faith and Fair Dealing Because Plaintiffs Pled Sufficient Allegations of a Valid Contract*

The Reed Defendants are not entitled to dismissal of the claim of breach of the duty of good faith and fair dealing because Plaintiffs' pled sufficient allegations. To survive a motion to dismiss, the Plaintiff must only "state a *prima facie* case for breach of the implied covenant of good faith and fair dealing." *Morris v. Bank of America Nevada*, 110 Nev. 1274, 1277, 886 P.2d 454, 456 (Nev. 1994) (determining that the court only needed to "get a picture which may support a bad faith action[.]") Essentially, "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton,* 107 Nev. at 234.) Notably, even when "there [i]s no breach of contract, a plaintiff may still be able to recover damages for breach of the implied covenant of good faith and fair dealing." *Id.* at 457 (citing *Hilton Hotels v. Butch Lewis Productions,* 107 Nev. 226,232, 808 P.2d 919, 922.) Indeed, "[w]hether a breach of the letter of the contract exists or not, the implied covenant of good faith is an obligation independent of the consensual contractual covenants." *Id.* Thus, Plaintiffs are not even required to allege breach of contract to be entitled to damages for breach of the covenant of good faith and fair dealing.

As discussed above, the Plaintiffs alleged that Reed Defendants entered a valid contract whereby the Reed Defendants promised to secure clear and marketable title to the Property and, in return, the Plaintiffs promised to pay a commission to the Reed Defendants.  (Compl. ¶¶ 31, 278-279.)  Plaintiffs alleged that the Reed Defendants breached their duty of good faith and fair dealing by committing, and conspiring to commit, several forms of fraud, negligence, and breach of contract, at a minimum.  (*See,* Compl. pp. 22, 24-25, 27-33, 35-38.)  Any one of those claims provides sufficient allegations for breach of the duty of good faith and fair dealing associated with the Reed Defendants' contractual obligation to act as Plaintiffs' fiduciaries to obtain clear and marketable title for Plaintiffs.

Notably, the Reed Defendants only argue that Plaintiffs failed to allege the existence of an underlying contract; the Reed Defendants do not argue that Plaintiffs failed to allege any other elements.  *See* Docket No. 9 at 15:14-18.  The Reed Defendants cite to two cases, but neither one of those cases supports the Reed Defendants' position because neither one of those cases addresses a motion to dismiss a claim for breach of the duty of good faith.  *See* Docket No. 9 at 14:27-15:4  (citing *State, University and Community College System v. Sutton,* 120 Nev. 972, 989, 103 P.3d 8, 19 (2004), *and Hilton Hotels Corp. v. Butch Lewis Productions, Inc.,* 109 Nev. 1043, 1046, 862, 2 P.2d 1207, 1209 (1993).  Indeed, the Reed Defendants offer no case law to support their argument.  Instead, the Reed Defendants merely invite the Court to construe the pleadings so narrowly as to be utterly unreasonable.

In sum, Plaintiffs alleged that the Reed Defendants received commissions based on contractual obligations that the Reed Defendants intended to create.  Plaintiffs alleged that the Reed Defendants breached the contractual obligations in bad faith.  As a result, the Reed Defendants' Motion to Dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing must be denied.

### III.     CONCLUSION

For the reasons stated above, the Court should deny the Reed Defendants Motion to Dismiss.

Respectfully submitted this 31st day of December, 2009.

                          GIBSON LOWRY BURRIS LLP


                          BY  /S/ J. SCOTT BURRIS
                                STEVEN A. GIBSON, ESQ.
                                Nevada Bar No. 6656
                                J. SCOTT BURRIS, ESQ.
                                Nevada Bar No. 10529
                                City Center West
                                7201 West Lake Mead Boulevard, Suite 503
                                Las Vegas, Nevada  89128
                                *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5-1 of this Court, I certify that I am an employee of Gibson Lowry Burris LLP and that on this 31st day of December, 2009, I caused a correct electronic copy of the foregoing RESPONSE TO MOTION TO DISMISS OF DEFENDANTS EDWARD C. REED, BARBARA R. REED, AND RE/MAX EXTREME to be served via CM/ECF:

| | |
|---|---|
| Michael E. Stoberski, Esq.<br>Zachary J. Thompson, Esq.<br>Olson, Cannon, Gormley & Desruisseaux<br>9950 West Cheyenne Avenue<br>Las Vegas, Nevada 89129<br>*Counsel for Defendants*<br>Edward C. Reed; Barbara R. Reed; and<br>Reed Team, d/b/a RE/MAX Extreme | Jonathan B. Owens, Esq.<br>Andres Camacho, Esq.<br>Alverson, Taylor, Mortensen & Sanders<br>7401 West Charleston Boulevard<br>Las Vegas, Nevada 89117<br>*Counsel for defendant*<br>Alverson, Taylor, Mortensen & Sanders |

By: __/s/ J. Scott Burris_____
An employee of Gibson Lowry Burris LLP