UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TAI-SI KIM and JIN-SUNG HONG,           )
                                         )
        Plaintiffs,                      )    2:09-CV-02008-PMP-PAL
                                         )
v.                                       )
                                         )
ADAM B. KEARNEY, et al.,                 )    ORDER
                                         )
        Defendants.                      )
                                         )

Presently before the Court is Defendants RE/MAX Extreme, Edward C. Reed and Barbara P. Reed's Motion to Dismiss (Doc. #9), filed on December 14, 2009. Plaintiffs filed an Opposition (Doc. #14) on December 31, 2009. Defendants filed a Reply (Doc. #17) on January 11, 2010.

Also before the Court is Defendant Alverson, Taylor, Mortensen & Sanders' Motion to Dismiss Plaintiffs' Complaint (Doc. #10), filed on December 17, 2009. Plaintiffs filed an Opposition (Doc. #19) on January 18, 2010. Defendant filed a Reply (Doc. #21) on January 28, 2010.

Also before the Court is Defendant First American Title Insurance Company's Motion to Dismiss (Doc. #12), filed on December 24, 2009. Plaintiffs filed an Opposition (Doc. #18) on January 11, 2010. Defendant filed a Reply (Doc. #20) on January 21, 2010.

**I. BACKGROUND**

In March 2003, Plaintiffs Tae-si Kim and Jin-sung Hong ("Hong") sought the assistance of Defendants Edward Reed and Barbara Reed ("the Reeds") in making real

estate transactions in Nevada.¹ (Pl.'s Compl. at 4-5.) The Reeds operate Defendant Reed Team, doing business as RE/MAX Extreme, a franchisee of Defendant RE/MAX International, Inc. ("RE/MAX"). (Id. at 4.) In June 2005, Plaintiffs contemplated the purchase of an investment property identified as APN#177-19-801-008 (the "Property") in Clark County, Nevada. (Id. at 7.) The Reeds advised Plaintiffs they could obtain conventional financing for the property. (Id.) The Reeds also advised Plaintiffs the Property was worth much more than the market price when it was not, and pressured Plaintiffs into acting quickly so as not to lose the investment opportunity. (Id.)

On June 24, 2005, Plaintiff Hong entered into a real estate purchase contract to purchase the Property for $435,000, which had to close by August 12, 2005. (Id. at 7-8.) Hong made a non-refundable $10,000 deposit with Defendant First American Title Company ("First American"). (Id. at 8.) On July 1, 2004, Hong received a pre-approval letter from a mortgage company for conventional financing for the Property up to $445,000. (Id.) However, the Reeds subsequently told Plaintiffs the financing fell through. (Id.) The Reeds therefore advised Hong to obtain alternate financing. (Id.)

The Reeds recommended Plaintiffs engage Edward Reed's friend, Defendant Adam Kearney ("Kearney"), who was a licensed mortgage broker, to obtain the financing. (Id. at 9.) The Reeds and Kearney told Plaintiffs they must pay an additional earnest-money deposit by August 12, 2005 to prevent losing the previous $10,000 deposit. (Id.) The Reeds advised Plaintiffs to obtain the $100,000 through a loan from Kearney and Frank Napoli, which Plaintiffs did. (Id. at 9-10.)

On August 7, the Reeds and Kearney told Plaintiffs there was an additional $17,394 shortfall associated with the financing. (Id. at 10.) This amount approximated the

---

¹ The Court accepts as true the Complaint's allegations at the motion to dismiss stage. Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).

2

Reeds' and RE/MAX's commission on the transaction. (Id.) The Reeds and Kearney directed Plaintiffs to pay the money directly to Kearney, as opposed to First American, which Plaintiffs did. (Id.)

On August 10, the Reeds and Kearney instructed Hong that he must assign his right to purchase the Property and his interest in the $10,000 deposit to Kearney. (Id. at 11.) In exchange for the assignment, the Reeds and Kearney promised that Kearney would obtain the Property for Plaintiffs. (Id.) Hong thus entered into an option agreement, drafted by RE/MAX's attorney, which gave Hong the option to purchase the Property from Kearney within one year. (Id.) Kearney would receive a $10,000 fee for acting as Hong's facilitator in obtaining the Property. (Id. at 12.) Pursuant to the option agreement, Hong was to pay the closing costs and pay Kearney's monthly mortgage payments associated with obtaining the loan to pay for the Property. (Id. at 12-13.) If Hong did so, he could exercise the option to buy the Property within one year by providing notice and paying $10,000, and by paying the remaining principal and any interest accrued as of the date of closing. (Id.) Upon these acts, Kearney was to open an escrow with First American, cause the escrow agent to issue to Hong a policy of title insurance, and convey the Property to Hong free and clear of the loan Kearney obtained to acquire the Property. (Id.)

Kearney obtained a loan in the amount of $315,000 from Defendant Cumorah Credit Union ("Cumorah"), with a lien against the Property. (Id. at 15.) Kearney obtained the Property through First American's escrow services on August 15. (Id.) The Reeds thereafter sent Hong a letter congratulating him on the purchase of his land. (Id.)

On August 31, Plaintiffs refinanced their personal property and obtained $108,710, and used this money to pay the $100,000 note to Kearney and Frank Napoli. (Id.) Hong also began paying Kearney's monthly payments on the Cumorah loan, as required under the option agreement. (Id. at 16.)

///

1      In March 2006, Hong acquired $330,000 from Korea to exercise the option under the agreement. (Id.) Hong gave notice he was exercising the option. (Id. at 13.) The Reeds and Kearney advised Plaintiffs that opening escrow with First American, as was supposed to happen under the option agreement, was unnecessary and costly. (Id. at 16.) Instead, the Reeds and Kearney instructed Plaintiffs to deliver the funds directly to Kearney. (Id.) Plaintiffs did so, paying the $10,000 fee to Kearney plus paying the remaining principal and interest on the Cumorah loan. (Id. at 13, 17.) Kearney did not open escrow, cause the issuance of title insurance, or convey the Property to Hong. (Id.) Kearney did not pay off the Cumorah loan, either. (Id. at 17.)

In March 2006, Plaintiffs requested assurances from the Reeds and Kearney that clear title had been conveyed. (Id. at 18.) The Reeds and Kearney assured Plaintiff during a telephone conversation that the Property had been cleared of the Cumorah lien. (Id.) In June 2006, the Reeds again assured Plaintiffs via telephone that the Property had been transferred to Plaintiffs free of any liens. (Id. at 19.) Plaintiffs called Defendant Gina Thomas ("Thomas"), an employee of First American, for confirmation that the Property had been transferred to Plaintiffs free of any liens. (Id.) Thomas informed Plaintiffs the land was not clear of liens and was still in Kearney's name. (Id.)

Based on this information, Plaintiffs retained legal counsel Defendant James Zemelman ("Zemelman") of the law firm Alverson, Taylor, Mortensen & Sanders ("ATM&S") to enforce the agreement and clear title to the Property. (Id.) Zemelman called Thomas, who told Zemelman that First American had lost the documents related to Kearney's purchase of the Property. (Id. at 20.) According to Plaintiffs, Zemelman knew that Thomas was lying. (Id.) Zemelman told Thomas that Kearney must ensure the Property was transferred to Plaintiffs clear of any liens. (Id.)

On June 27, Kearney and Thomas transferred the Property to Plaintiffs, but Kearney did not pay off the Cumorah loan. (Id.) Neither Kearney nor Thomas informed

4

Plaintiffs or Zemelman that the Cumorah loan still was not satisfied. (Id.) A few days after the transfer, Thomas told Zemelman the Property was free of the Cumorah lien and the Property was transferred to Plaintiffs. (Id.)

In July 2006, Zemelman informed Plaintiffs that the Property had been transferred to Plaintiffs with clear title. (Id. at 21.) After the transfer of the Property, Kearney made payments on the Cumorah loan for a while. (Id. at 22.) But in December 2008, Plaintiffs received notice of a foreclosure on the Cumorah loan, their first notice that the loan had not been paid and had not been cleared off the Property. (Id.) Plaintiffs subsequently lost the Property and all the funds used to obtain it. (Id.)

Plaintiffs filed suit in this Court on October 15, 2009, asserting claims against Kearney, the Reeds, the Reed Team, RE/MAX, First American, Thomas, Zemelman, and ATM&S. Plaintiffs brings thirty-two separate counts against Defendants, such as securities fraud, breach of contract, breach of fiduciary duties, and negligence. Defendants the Reeds and Reed Team move to dismiss three of the counts asserted against them in the Complaint. Defendant ATM&S moves to dismiss three of the counts against it, as well as Plaintiffs' request for punitive damages. Defendant First American moves to dismiss all causes of action asserted against it. Plaintiffs oppose the motions.

**I. LEGAL STANDARD**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003). A plaintiff must make sufficient factual

5

1  allegations to establish a plausible entitlement to relief.  Bell Atl. Corp. v Twombly, 550
2  U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions,
3  [or] a formulaic recitation of the elements of a cause of action." Id. at 555.  However, a
4  complaint "need not identify the statutory or constitutional source of the claim raised in
5  order to survive a motion to dismiss." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008).

**II. REED MOTION TO DISMISS (Doc. #9)**

7  The Reeds and Reed Team move to dismiss counts twenty-three (breach of
8  fiduciary duty), twenty-six (breach of contract), and twenty-seven (breach of the duty of
9  good faith and fair dealing).  The Reeds argue the breach of fiduciary duty claim must be
10 dismissed because under Nevada law, real estate licensees are not subject to common law
11 duties, they are subject only to the statutory duties set forth in Nevada Revised Statutes,
12 Chapter 645.  The Reeds also move for dismissal of the contract-related claims, as the
13 Complaint does not allege any contract to which the Reeds were a party, and affirmatively
14 alleges the Reeds were not a party to the option agreement.

15 Plaintiffs respond that Chapter 645 does not exempt Defendants from common
16 law breach of fiduciary duty claims.  Rather, the statutory duties displace only duties of care
17 and duties of disclosure.  Further, Plaintiffs argue that if the licensee contractually binds
18 itself to act as a fiduciary, the statute does not apply.  Plaintiffs further contend that if the
19 statutory duties apply, then Plaintiffs adequately have alleged facts supporting breach of the
20 statutory duties.  Finally, Plaintiffs argue that even if the Reeds are correct, they are
21 licensees but the company the Reed Team is not, and therefore this argument would not
22 apply to the company.  As to the contractual claims, Plaintiffs argue that they have alleged
23 Defendants and Plaintiffs intended to create contractual obligations arising out of the option
24 agreement, the assignment, the Reeds' partnership with Kearney, and a contractual
25 obligation to obtain clear and marketable title on Plaintiffs' behalf.
26 ///

6

**A. Breach of Fiduciary Duty**

Pursuant to Nevada Revised Statutes § 645.251,

> A licensee is not required to comply with any principles of common law that may otherwise apply to any of the duties of the licensee as set forth in NRS 645.252, 645.253 and 645.254 and the regulations adopted to carry out those sections.

The statute does not eliminate a breach of fiduciary duty claim against a licensee. Rather, it defines the duties a licensee owes as those set forth in the statute without resort to a common law duty of care. For example, in an unpublished decision, the Nevada Supreme Court rejected the plaintiff's breach of fiduciary duties claim not because no such claim will lie against a licensee, but because the plaintiff had not established that the licensees violated any of their fiduciary duties to the plaintiff. Chamani v. Mackay, Nos. 47550, 48020, 2008 WL 6101956, *2 (Nev. Sept. 9, 2008) (unpublished). Among the duties a licensee owes are duties of disclosure, to exercise reasonable skill and care, to not disclose confidential information. Nev. Rev. Stat. §§ 645.252-.254. Further, a licensee "shall not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest." Nev. Rev. Stat. § 645.3205.

The Court will deny Defendants' motion to dismiss Plaintiffs' breach of fiduciary duties claim. Section 645.251 does not eliminate a breach of fiduciary cause of action. Moreover, to the extent it does, the fact that Plaintiffs mislabeled their claim as one for breach of fiduciary duty rather than as one for breach of statutory duty is not fatal to their claim. Plaintiffs have alleged facts which would constitute a breach of Defendants' statutory duties, including engaging in allegedly failing to disclose material facts, failing to exercise reasonable skill and care, and engaging in deceitful, fraudulent, or dishonest conduct.

///

///

**B. Contract-Related Claims**

Under Nevada law, for a contract to be enforceable there must be "an offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005). To support a breach of contract claim, a plaintiff must allege in his complaint "facts necessary to establish contract formation." Snyder v. Viani, 885 P.2d 610, 613 (Nev. 1994). Whether an enforceable contract exists is a question of fact. May, 119 P.3d at 1257.

In Nevada, "every contract imposes upon the contracting parties the duty of good faith and fair dealing." State, Univ. & Community Coll. Sys. v. Sutton, 103 P.3d 8, 19 (Nev. 2004) (quotation omitted). A breach of good faith and fair dealing claim necessarily "fails absent a contractual relationship." Alam v. Reno Hilton Corp., 819 F. Supp. 905, 910 (D. Nev. 1993).

Plaintiffs allege the Reeds and the Reed Team "were not parties to the RE/MAX Option Agreement." (Compl. at ¶ 29.) Plaintiffs therefore cannot maintain breach of contract or breach of the covenant of good faith and fair dealing claims based on breaches of the option agreement, as Plaintiffs' own allegations deny the existence of a contractual relationship between Plaintiffs and the Reeds or the Reed Team under that agreement.

Taking the remaining allegations of the Complaint as true, and making all reasonable inferences therefrom in favor of Plaintiffs, the Complaint fails to allege an enforceable contract as between Plaintiffs and the Reeds and the Reed Team. Plaintiffs do not identify an offer, acceptance, meeting of the minds, or consideration supporting any such contract, oral or written. To the extent Plaintiffs attempt to rely on a partnership or joint venture theory, Plaintiffs do not make factual allegations supporting the conclusory allegation that the Reeds and Reed Team were in a partnership or joint venture with Kearney. The Court therefore will dismiss these claims without prejudice for Plaintiffs to allege facts supporting the formation of a contract sufficient to support their contract-related

claims.

**III. ATM&S MOTION TO DISMISS (Doc. #10)**

ATM&S moves to dismiss counts twenty-one (negligent undertaking), twenty-five (breach of fiduciary duties), and thirty-two (negligent supervision). ATM&S argues the negligent undertaking claim must be dismissed because such a claim requires physical harm, and Plaintiffs have not alleged physical harm. Alternatively, ATM&S argues that assuming this claim is a malpractice claim, Plaintiffs have failed to allege facts showing ATM&S breached any duty to Plaintiffs because Plaintiffs do not allege any facts supporting the conclusory allegation that Zemelman should have known that Thomas was lying about whether the Cumorah Credit Union loan had been cleared from the Property. ATM&S also argues that even if Plaintiffs have alleged a breach, they have not alleged proximate cause because Kearney, the Reeds, and Thomas were the cause of Plaintiffs' injuries. ATM&S contends that under Plaintiffs' own allegations, by the time Plaintiffs contacted ATM&S, they already had turned over to Kearney all the funds. ATM&S moves to dismiss the breach of fiduciary duties and negligent supervision claims for this same reason. ATM&S also moves to dismiss Plaintiffs' request for punitive damages, contending that Plaintiffs do not allege any conduct on its part that would support punitive damages.

Plaintiffs respond that they are not alleging a negligent undertaking claim which requires proof of physical harm, they are alleging negligent undertaking to perform services, or a legal malpractice claim. Plaintiffs further contend they adequately have alleged how ATM&S breached the duties owed because ATM&S did not ensure the Property was conveyed free of liens and filed no lawsuits on Plaintiffs' behalf. Plaintiffs contend they may plead proximate cause generally, but in any event, they have alleged facts in support because if ATM&S had acted to protect Plaintiffs' rights, Plaintiffs would have been able to save the Property and/or recover damages from the other Defendants.

///

Plaintiffs' twenty-first cause of action is entitled "negligent undertaking to perform services." (Compl. at 34.) Plaintiffs actually are asserting a legal malpractice claim, regardless of the title Plaintiffs assigned to the claim. To plead a legal malpractice claim, a plaintiff must allege:

> (1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of the client's damages; and (5) actual loss or damage resulting from the negligence.

Day v. Zubel, 922 P.2d 536, 538 (Nev. 1996). Proximate cause means "that cause which, in natural and continuous sequence and unbroken by any efficient, intervening cause, produces the injury complained of and without which the result would not have occurred." Doud v. Las Vegas Hilton Corp., 864 P.2d 796, 801 (Nev. 1993). "Proximate cause, or legal cause, consists of two components: cause in fact and foreseeability." Id.; Taylor v. Silva, 615 P.2d 970, 971 (Nev. 1980) ("A negligent defendant is responsible for all foreseeable consequences proximately caused by his or her negligent act."). Proximate cause usually is a question of fact. Lee v. GNLV Corp., 22 P.3d 209, 212 (Nev. 2001).

Plaintiffs have alleged an attorney/client relationship with ATM&S and a duty flowing from that relationship. Plaintiffs also have alleged ATM&S breached its duty to Plaintiffs. While ATM&S is correct that Plaintiffs present no factual support for the statement that Zemelman knew Thomas was lying, Plaintiffs also allege Zemelman did not follow up to ensure the Property was in fact transferred to Plaintiffs free of any liens. Whether an attorney of ordinary skill and capacity would have done so, or would have relied on Thomas's representation alone, is not suitable for resolution at this stage of the proceedings. Further, Plaintiffs allege Zemelman did not pursue any litigation against the Reeds or Kearney. Whether an attorney of ordinary skill and capacity would have recommended pursuit of the Reeds or Kearney is not suitable for resolution at this stage of

the proceedings. It was foreseeable that if Zemelman did not ensure the Property was free of the Cumorah lien, Plaintiffs' Property and their investment therein would be jeopardized. Taking Plaintiffs' factual allegations as true, Plaintiffs have alleged a breach.

Plaintiffs also have alleged ATM&S's alleged breaches proximately caused injuries to Plaintiffs. Although Plaintiffs already had turned over all of the funds to the other Defendants prior to hiring ATM&S, Plaintiffs have alleged that had Zemelman and ATM&S not breached their duties, Plaintiffs would have known about the Cumorah lien prior to an unexpected foreclosure notice and could have pursued remedies against the other Defendants earlier. That the other Defendants caused Plaintiffs harm does not relieve ATM&S from harm allegedly caused by its breaches, which potentially could have mitigated the harm caused by the other Defendants. The Court therefore will deny Defendant ATM&S's motion to dismiss Plaintiffs' "negligent undertaking" claim.

For these same reasons, the Court will deny Defendant ATM&S's motion to dismiss Plaintiffs' claims for breach of fiduciary duty and negligent supervision. ATM&S challenges these claims only on the basis of failure to allege proximate cause. However, as just set forth, Plaintiffs have alleged proximate cause sufficient to withstand a motion to dismiss.

### C. Punitive Damages

Plaintiffs do not respond to Defendant's argument that Plaintiffs fail to allege any conduct by ATM&S that would support the award of punitive damages. Plaintiffs' Complaint does not allege any oppressive, fraudulent, or malicious conduct on ATM&S's part. See Nev. Rev. Stat. § 42.005(1). The Court therefore will grant Defendant ATM&S's motion to dismiss Plaintiffs' request for punitive damages.

**IV. FIRST AMERICAN'S MOTION TO DISMISS (Doc. #12)**

First American moves to dismiss counts eight (fraudulent or intentional misrepresentation), eleven (fraudulent concealment), sixteen (civil conspiracy), seventeen

11

(concert of action), eighteen (aiding and abetting), twenty-two (negligent undertaking to perform services), twenty-eight (unjust enrichment), and thirty-one (negligent supervision). First American argues that each of these claims hinges on a single allegation that in June 2006, its employee, Thomas, told Plaintiffs' attorney that the Property was free and clear of the Cumorah lien.  First American contends that a review of the recorded documents relating to the Property show Thomas's statement was factually correct because the Cumorah Deed of Trust contains an incorrect legal description, and thus a title search would not have shown the Cumorah lien in connection with the Property.  Moreover, First American argues that Plaintiffs fail to support their claims with plausible factual allegations.  Specifically, First American contends Plaintiffs fail to allege agreement to support their civil conspiracy and concert of action claims, there are no factual allegations to support that First American knowingly assisted Kearney or the Reeds in any fraud or provided any substantial assistance, there are no factual allegations supporting negligent undertaking or unjust enrichment arising out of First American's conduct as escrow agent, and Plaintiffs fail to allege any facts to support the conclusory allegation that First American negligently supervised Thomas.

Plaintiffs respond that First American is attempting to have factual issues resolved at the dismissal stage.  Additionally, Plaintiffs argue that First American knew about the Cumorah lien because First American filed it, and had First American done a title search under either the parcel number or the owner's name, it would have discovered the Cumorah lien.  As to the other claims, Plaintiffs respond they have alleged facts sufficient to support their claims.

### A.  Factual Truth

The metes and bounds description of the Property in the Grant, Bargain and Sale Deed from the prior owners to Kearney differs from that in Cumorah's Deed of Trust.

///

(First Am. Title Ins. Co.'s Mot. to Dismiss (Doc. #12), Exs. B, C.)[2]  Additionally, Cumorah's Deed of Trust identifies a different parcel number than the Grant, Bargain and Sale Deed.  (Id.)  First American thus argues that because a title search at that time would not have revealed the Cumorah lien, Thomas did not misrepresent the Property's status.

Plaintiffs' Complaint alleges that on June 26, 2006, Thomas informed Plaintiffs that the Property was not clear of the liens and Property still was in Kearney's name.  (Compl. at ¶¶ 122, 124-26.)  Taking all reasonable inferences in Plaintiffs' favor, "liens" would include the Cumorah lien.  Thus, as of June 26, Thomas was aware of the Cumorah lien and represented that it encumbered the Property.  A few days later, after the Property was transferred to Plaintiffs, Thomas informed Plaintiffs' attorney that the Property had been transferred to Plaintiffs and was not encumbered by the Cumorah lien.  (Id. at ¶¶ 134-36.)  The Court will not resolve, at the motion to dismiss stage, the discrepancy in Thomas's alleged representations regarding the Cumorah lien.  The Court will deny Defendant First American's motion to dismiss this claim.

### B. Failure to Plead Supporting Fact

#### 1. Civil Conspiracy and Concert of Action

Civil conspiracy and concert of action, although distinct causes of action, each require the plaintiff to allege an agreement.  Dow Chem. Co. v. Mahlum, 970 P.2d 98, 112 (Nev. 1998).  To establish a plausible entitlement to relief at the motion to dismiss stage, a complaint must set forth "enough factual matter (taken as true) to suggest that an agreement was made."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  This is not a heightened pleading requirement; rather "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  Id. at 556.

---

[2] At the motion to dismiss stage, the Court may consider documents that are not physically attached to the complaint if their authenticity is uncontested and the complaint "necessarily relies on them."  Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).

An allegation the defendants engaged in parallel conduct combined with a bare assertion of conspiracy is insufficient. Id. Consequently, allegations of parallel conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id. at 557.

Plaintiffs have failed to allege facts raising a reasonable expectation that discovery will uncover an agreement between Thomas and Kearney. Plaintiffs make only a conclusory allegation of agreement. The contextual facts Plaintiffs allege do not raise a suggestion of agreement. The Court will grant Defendant First American's motion to dismiss these two claims without prejudice.

### 2. Aiding and Abetting

To establish aiding and abetting in the civil context, a plaintiff must allege: (1) the primary violator breached a duty that injured the plaintiff; (2) the alleged aider and abettor "was aware of its role in promoting [the breach] at the time it provided assistance," and (3) the alleged aider and abetter "knowingly and substantially assisted" the primary violator in committing the breach. Dow Chem. Co., 970 P.2d at 112. "The second and third elements should be weighed together, that is, greater evidence supporting the second element requires less evidence of the third element, and vice versa." Id.

Plaintiffs fail to allege facts that First American was aware of its role in promoting Kearney's fraud and knowingly assisted Kearney in any fraud. Plaintiffs allege Thomas misrepresented the Property's status. However, Plaintiffs do not allege Thomas did so with awareness of her role in any alleged fraud at the time she told the Plaintiffs the Property was clear of the Cumorah lien, or that she knowingly assisted Kearney in perpetrating a fraud. Plaintiffs make only a conclusory allegation of aiding and abetting. The Court therefore will grant First American's motion to dismiss this claim without prejudice.

///

### 3. Negligent Undertaking to Perform Services and Unjust Enrichment

Both of these causes of action relate to First American's provision of services in "facilitating Kearn[e]y's acquisition of the Property for Plaintiffs." (Compl. at ¶¶ 260, 291.)  Plaintiffs do not allege any facts supporting any wrongdoing by Thomas or First American in relation to the initial escrow in which Kearney purchased the Property on Plaintiffs' behalf.  Plaintiffs thus have not alleged First American failed to exercise care in performing services in relation to this transaction, or that First American was unjustly enriched by earning and keeping commissions and fees from this transaction.  See Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (Nev. 1997) (stating that unjust enrichment claim applies to situations where "the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]") (quotation omitted); Restatement (Second) of Torts § 324A (providing for liability for failure to exercise reasonable care in undertaking to perform services).  The Court therefore will grant First American's motion to dismiss this claim without prejudice.

### 4. Negligent Supervision

In Nevada, an employer must exercise "reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." Hall v. SSF, Inc., 930 P.2d 94, 99 (Nev. 1996).  Plaintiffs do not allege facts in support of this claim.  Plaintiffs allege merely that Thomas either intentionally or negligently misrepresented the status of the Property's title.  Plaintiffs do not allege any facts that First American failed to train or supervise Thomas, and that failure to train or supervise led to Thomas's alleged misrepresentation.  The Court therefore will grant First American's motion to dismiss this claim without prejudice.

///

///

**V. CONCLUSION**

   IT IS THEREFORE ORDERED that Defendants RE/MAX Extreme, Edward C. Reed and Barbara P. Reed's Motion to Dismiss (Doc. #9) is hereby GRANTED in part and DENIED in part.  The motion is granted in that counts twenty-six (breach of contract), and twenty-seven (breach of the duty of good faith and fair dealing) are hereby dismissed without prejudice as to Defendants RE/MAX Extreme, Edward C. Reed, and Barbara P. Reed.  The motion is denied in all other respects.

   IT IS FURTHER ORDERED that Defendant Alverson, Taylor, Mortensen & Sanders' Motion to Dismiss Plaintiffs' Complaint (Doc. #10) is hereby GRANTED in part and DENIED in part.  The motion is granted as to Plaintiffs' request for punitive damages as against Defendant Alverson, Taylor, Mortensen & Sanders.  The motion is denied in all other respects.

   IT IS FURTHER ORDERED that First American Title Insurance Company's Motion to Dismiss (Doc. #12) is hereby GRANTED in part and DENIED in part.  The motion is granted in that counts sixteen (civil conspiracy), seventeen (concert of action), eighteen (aiding and abetting), twenty-two (negligent undertaking to perform services), twenty-eight (unjust enrichment), and thirty-one (negligent supervision) are dismissed without prejudice as to Defendant First American Title Insurance Company.  The motion is denied in all other respects.

DATED: August 29, 2010

_____
PHILIP M. PRO
United States District Judge